IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHRISTOPHER TORO,** | : | **Civil No.  4:24-CV-2023** |
| | : | |
| **Plaintiff** | : | **(Chief Judge Brann)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **FRANK BISIGNANO,**[1] | : | |
| **Commissioner of Social Security,** | : | |
| | : | |
| **Defendant.** | : | |

## REPORT AND RECOMMENDATION

## I.    Introduction

Christopher Toro appeals from an adverse decision by a Social Security Administrative Law Judge (ALJ) which denied his closed period claim for disability benefits. In this appeal, Toro first challenges the ALJ's determination that he was seeking a closed period of benefits. Toro advances this argument even though he conceded at the administrative hearing that he had resumed work in September of 2022, and through his counsel specifically requested only a closed period of benefits.

---

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Toro then argues that the ALJ erred in the evaluation of the medical opinion evidence and failed to make accommodations for his alleged use of a cane. With respect to these substantive allegations of error we are enjoined to apply a deferential standard of review, a standard of review which simply asks whether there is "substantial evidence" supporting the Administrative Law Judge's (ALJ) determination. With respect to this legal guidepost, as the Supreme Court has explained:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S. Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S. Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S. Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

In the instant case, we agree that Toro should remain bound by his concession that he was seeking only a closed period of disability benefits. Further with regard

2

to this closed period claim, after a review of the record, and mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" Biestek, 139 S. Ct. at 1154, we conclude that substantial evidence supported the ALJ's findings in this case. Therefore, for the reasons set forth below, we recommend that the district court affirm the decision of the Commissioner.

## II.    Statement of Facts and of the Case

### A. Introduction

On October 26, 2021, Christopher Toro filed a Title II application for disability insurance benefits, alleging an onset of disability beginning February 1, 2020. (Tr. 30). In this application Toro alleged, in part, that he was disabled due to lumbar disc displacement. (Tr. 33). Toro was born on August 7, 1980 and was 39 years old at the time of the alleged onset of his disability, making him a younger worker under the Commissioner's regulations. (Tr. 39). He had at least a high school education and prior employment as an assistant supervisor, work which is classified as generally performed at the sedentary exertional level and was actually performed by Toro at the light exertional level. (Id.)

## B. **Toro's Employment History and Activities of Daily Living**

In the Fall of 2022, during the time frame initially embraced by Toro's disability application, the plaintiff returned to the workforce and was employed in several different capacities. As the ALJ explained:

> [Toro] worked after the alleged disability onset date and did have earnings above substantial gainful activity levels from the fourth quarter of 2022 through at least the second quarter of 2023. The earnings records show new hire information for three jobs the claimant has obtained in the past 2 years. He was hired by Sema Logistics LLC on November 4, 2022; Leading Logistics LLC on January 30, 2023 and Standard Farms LLC on May 25,2023. In terms of the earnings the claimant had $4,909 ($1,636.33 monthly) in the fourth quarter of 2022; $6,483 ($2,161 monthly) in the first quarter of 2023 and $5,182 ($1,727.33 monthly) in the second quarter of 2023 (Exhibit 10D). These earnings are all above the substantial gainful activity monthly minimums for 2022 and 2023. . . .

(Tr. 32). Given Toro's employment history which showed that he had returned to work by the Fall of 2022, at the time of his ALJ hearing, the plaintiff through his counsel moved to amend his claim to assert a closed period of disability beginning on February 1, 2020 and continuing through September 15, 2022. (Tr. 52).

Additionally, by the Spring of 2022 Toro reported that he was going to the gym, (Tr. 681), and was coaching youth football. (Tr. 35, 37, 38). In an adult function report Toro also stated that he helped care for three children and pets; indicated that he had no problems with personal care; prepared his own meals; did laundry; drove; shopped occasionally; and managed his personal finances. (Tr. 258-263).

4

### C. **Toro's Clinical History**

Toro's clinical history was marked by injuries resulting from a 2019 motorcycle accident, but during the pertinent time frame from 2020 through September 2022 Toro's treatment records were many ways largely unremarkable. As the ALJ aptly noted when describing this clinical history:

> By way of history, the claimant was involved with a motorcycle accident which resulted in multiple injuries including a pelvic fracture with trauma (Exhibit 1F/11). Moving forward the claimant complained about back pain and records show that the claimant met with a chiropractor due to back pain, muscle aches and numbness in his left leg (Exhibit 8F/36). On examination the claimant's gait was non-antalgic, Romberg testing, heel walking and toe walking were all normal. The claimant did have reduced range of motion in his lumbar spine but muscle strength in his lower extremities was 5/5, reflexes were normal and sensation was intact (Exhibit 8F/37). The claimant was diagnosed with lumbar disc displacement without myelopathy, lumbar region somatic dysfunction, sacral region somatic dysfunction and segmental and somatic dysfunction of the thoracic region. It was determined the claimant would go to treatment with the chiropractor 2 times a week for 3 weeks and then taper to 1-2 times a week for 2-3 weeks (Exhibit 8F/34,38).
>
> The claimant underwent electromyogram (EMG) testing in May of 2022 at that time it was an abnormal test. It showed bilateral median neuropathy at the wrists which was mild in nature, only affecting the median sensory component; bilateral ulnar motor nerve conduction studies were normal as were radial sensory left radial motor nerve conduction studies and a possibility of bilateral cervical radiculopathy could not be entirely excluded as the claimant refused the needle EMG examination (Exhibit 8F/31). Thereafter, he had an appointment with orthopedics due to concerns in regard to the various hardware he had from the several fractures which were fixed after his accident. They also discussed his low back pain, which the doctor noted was most likely

related in part to his sacral screws (Exhibit 9F/88). The claimant did undergo surgery to remove his sacral screws, initially he noted a lot of pain in his lower back following surgery but thereafter it subsided and he was doing well (Exhibit 9F/47). Objective testing was rather benign and noted that the claimant generally had normal balance and no weakness (Exhibit 9F/43,60,65).

The claimant started seeing another chiropractor in the spring of 2022 due to SI pain, low back pain and muscle spasms (Exhibit 10F/4). The chiropractor noted that the claimant had asymmetry and subluxation in the right L4-5, SI, bilateral T1-6 and L1-3. Edema was noted in the right SI and muscle spams were described. The claimant was diagnosed with segmental and somatic dysfunction of sacral region, hip pain right, segmental and somatic dysfunction of lumbar region, low back pain, segmental and somatic dysfunction of thoracic region and thoracic pain (Exhibit 10F/4). It was recommended the claimant have spinal manipulation two times a week (Exhibit 10F/5). After a few visits the claimant reported feeling 80% better and rated his symptoms as a 2 (Exhibit 10F/10). The claimant even reported going back to the gym (Exhibit 10F/11). Treatment records from the claimant's primary care provider are very benign. The claimant sees the doctor regularly for follow up in terms of past addition and suboxone treatment. However, in looking at the records, there are no real complaints regarding lower back and there is no objective findings noting any deficiencies in the claimant's musculoskeletal system. Additionally, the treatment notes reflect that not only has the claimant gone back to work but he was helping teach youth football (Exhibit 11F/1-35). In sum, while some of the clinical findings do support limitations there are many clinical findings within the normal range. Further, the records reflect that the claimant has consistently treated conservatively with chiropractic care. . . .

In addition to treatment records, the claimant underwent two consultative examinations with Dr. Monfared. The first examination was in April of 2022. On examination, The claimant's gait was slightly wide based but he had no limping or any assistive device. He was not able to walk on heels or toes and his squat was less than 10% due to pelvic pain but he was able to get on and off the examination table and

rise from a chair with some difficulty. Straight leg raise testing was limited to 20 degrees due to limitation of range of motion in his bilateral hips, this was confirmed in the seated position without any radicular patter of pain but pain in the hip area. The claimant had no evident joint deformities and his joints were stable and nontender. Deep tendon reflexes in upper extremities were intact, in his lower extremities they were physiologic on the right side but could not be elicited on the left. His strength was full in his upper extremities and slightly reduced with his lower extremities and sensation was intact. The claimant's hand and finger dexterity was intact and grip strength was 100%. The claimant was diagnosed with a history of motorcycle accident resulting in urethral injury and bladder injury status post-surgical treatment and bilateral pelvic injury status post-surgical treatment with limitation of range of motion at the hips associated with pain with severe balance difficulty, arthritis in his bilateral hands and back pain with no radiculopathy.

(Tr. 34-36).

### D. **Medical Opinions**

When evaluating Toro's disability claim the ALJ considered this clinical record, and Toro's self-reported activities of daily living, but also assessed an array of medical opinions from state agency experts, an examining consultative source, and a treating physician. These various medical sources reached differing conclusions regarding the extent to which Toro was impaired, although the greater weight of medical opinions agreed that Toro could perform light work.

At the outset, in May of 2022, a state agency expert, Dr. Edwin Malloy, made an initial Title II disability assessment in Toro's case. (Tr. 89-96). At that time the doctor found that Toro could perform a range of light work in that he could

7

occasionally lift or carry 20 pounds; frequently lift or carry 10 pounds; and could frequently reach, handle and finger objects. (Tr. 92). On March 7, 2023, a second state agency expert, Dr. Louis Tedesco examined Toro's clinical history and reached somewhat different conclusions regarding his physical capabilities. (Tr. 99-106). While Dr. Tedesco agreed that Toro could perform light work, unlike Dr. Malloy he determined that Toro did not suffer from any manipulative limitations. (Id.)

In addition, to these state agency expert opinions, the ALJ considered the April 20, 2022, opinion of Dr. Ziba Monfared, a one-time consulting, examining medical source. (Tr. 361-69).   In April of 2022 Dr. Monfared noted that Toro reported that he did not need any help at home and assisted his wife with child-care. (Tr. 361). He was not in acute distress. While he had a wide gait and some balance difficulties, did not display any limp, and did not use any cane or assistive device. (Id.) His hand and finger dexterity was intact and his displayed full bilateral grip strength. (Tr. 363). Based upon these findings, Dr. Monfared also agreed that Toro could perform light exertional work, but imposed limitations upon him in terms of standing and walking, and opined that he was confined to frequent reaching, handling, feeling and fingering. (Tr. 364-65).

Finally, on September 15, 2022, Dr. Eugene Stish, who was primarily treating Toro for heroin addiction, provided medical source statements which imposed far

greater restrictions on the plaintiff than those found by any other medical source. (Tr. 379-88). Dr. Stish reported that Toro was limited to sedentary work; needed a cane to ambulate; was only able to tolerate brief periods of standing or walking; would need frequent unscheduled breaks at work; and was extremely limited in his ability to reach, grasp, and finger objects. (Id.)

It was against the backdrop of this equivocal medical opinion evidence that Toro's case came to be considered by an ALJ.

### D. <u>The ALJ Hearing and Decision</u>

Toro's disability claim was heard by the ALJ on December 7, 2023. (Tr. 46-88). At that time, acknowledging that the plaintiff had obtained employment, Toro's counsel amended his claim to assert a closed period of disability from February 2020 to September 15, 2022. (Tr. 52). During the hearing, Toro agreed with his counsel that he was now able to work. (Tr. 56). Toro and a Vocational Expert then testified. (T. 56-88). In his testimony, Toro acknowledged his employment history and current work. (Id.) While claiming that he previously needed assistive devices Toro stated that presently he used a cane "occasionally", explaining that his cane use was limited to two or three days each month. (Tr. 57).

Following this hearing, on January 31, 2024, the ALJ issued a decision denying Toro's application for benefits. (Tr. 27-41). In that decision, the ALJ first

concluded that Toro met the insured status requirements of the Social Security Act through June 30, 2026. (Tr. 32). The ALJ then found that Toro had engaged in substantial gainful activity from September 2022 to the present but concluded that between the alleged date of onset—February 2020—and September 2022 there had been continuous 12-month periods in which he had not been employed. (Tr. 32-33). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Toro had the following severe impairment: lumbar disc displacement. (Tr. 33). At Step 3, the ALJ determined that Toro's impairment did not meet or medically equal the severity of any listed impairments. (Id.)

Between Steps 3 and 4, the ALJ fashioned a residual functional capacity ("RFC"), considering Toro's limitations from his impairments, stating that:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can frequently balance and stoop and occasionally kneel, crouch, crawl and climb ramps, stairs, ladders, ropes, or scaffolds. Additionally, the claimant is limited to frequent work at unprotected heights, around moving mechanical parts and in vibration.

(Tr. 33-34).

Specifically, in making the RFC determination, the ALJ considered the clinical evidence, the medical opinions, and Toro's self-described activities.

Specifically, with respect to the various medical opinions regarding Toro's capabilities, the ALJ observed that:

> Dr. Tedesco, the state agency medical consultant upon reconsideration opined that the claimant could perform a range of light exertional work where he could occasionally perform postural activities but could frequently balance and stoop. Additionally, the doctor opined the claimant should avoid concentrated exposure to vibration and hazards (Exhibit 4A/5-7). The undersigned finds this opinion persuasive as it is supported by a detailed explanation and rather consistent with the treatment records and the claimant's testimony received at hearing. While the records show that the claimant has some pain in his back which at times could make him use a cane those times are very rare. Objective findings show intact strength, coordination, gait and sensation. The claimant does have tenderness and spasms in his back which he treats via chiropractic care but otherwise he is able to work, go to the gym, etc. and the record would not support greater limitations.

(Tr. 37-38).

The ALJ concluded that the remaining medical opinions had less persuasive power, grounding these determinations in the evidence produced at the hearing. For example, when assessing the opinion of Dr. Malloy, the state agency expert who found that Toro could perform light work with postural and manipulative limitations, the ALJ explained that the postural and manipulative restrictions were not persuasive, stating:

> The undersigned does not find this opinion persuasive as walking/standing limitations are not even supported by the record nor are they consistent the objective findings or the claimant's own testimony. The claimant testified at hearing or reported to his doctors that he can handle his activities of daily living, he has been able to work

11

full time, he goes to the gym and has even taught/played football with kids. While the chiropractic records do show some tenderness and spasm in his back generally the records note his gait is normal, strength is intact and sensation is normal. The findings do not support the walking/standing limitations nor do they support the limitations in terms of pushing/pulling, using his upper extremities or the postural limitations.

(Tr. 37).

The ALJ also concluded that Dr. Monfared's opinion lacked persuasive power based upon an evaluation of that opinion in light of the clinical record as a whole. According to the ALJ:

The undersigned does not find this opinion persuasive. It is based on a one-time examination and the limitations are not even completely consistent with that examination's findings. The testing notes full strength in his upper extremities and slightly reduced in his lower extremities but he has intact sensation, full grip strength and intact dexterity. His gait was wide but he did not need an assistive device to ambulate and he could get in and out of a chair. Moreover, more recent testing notes a normal gait, full strength in all extremities, intact sensation and overall no weakness. These findings do not support the limitations to the claimant's walking and standing nor do they support any limitations to the claimant's extremities. The undersigned does find limiting the claimant to light work persuasive as it is supported by the claimant's medical history and testing noting tenderness and spams in his back at times.

(Tr. 37).

The ALJ was also unpersuaded by the opinion of Dr. Stich, who indicated that Toro was severely limited. As the ALJ observed:

12

The undersigned does not find this opinion persuasive as it is not supported by or even consistent with the doctor's own treatment records. In reviewing the doctor's records there are not many negative findings noted. The doctor is following the claimant due to a past addiction and while he seems him regularly there are no extensive physical complaints noted by the doctor or any findings to support such extreme limitations.

........................................................................

In reviewing the doctor's records there is little to no mention of back problems. The doctor notes hurt fingers from playing football but nothing more extreme in terms of the claimant's musculoskeletal system. Moreover, these extreme limitations are not even supported by the claimant's own reports and testimony that he has no issues with his activities of daily living, he helps take care of his kids, he works, goes to the gym, etc.

(Tr. 38).

Having arrived at this RFC assessment, the ALJ found at Step 4 that Toro could return to his past relevant work, and further determined at Step 5 that there were other jobs which existed in substantial numbers in the national economy which Toro could perform. (Tr. 39-41). Accordingly, the ALJ concluded that the plaintiff did not meet the stringent standard for disability set by the Act and denied this claim. (Id.)

This appeal followed. (Doc. 1). On appeal, Toro launches a threefold challenge to this decision arguing, first, that the ALJ erred in determining that he was seeking a closed period of benefits. Toro advances this argument even though he conceded at the administrative hearing that he had resumed work in September

13

of 2022, and through his counsel specifically requested only a closed period of benefits. Toro then advances two more substantive claims, asserting that the ALJ erred in the evaluation of the medical opinion evidence and failed to make accommodations for his alleged use of a cane. This case is fully briefed and is, therefore, ripe for resolution. For the reasons set forth below, and mindful of the deferential standard of review we apply when examining an ALJ decision, we recommend that the court affirm the decision of the Commissioner.

## III.   <u>Discussion</u>

### A. <u>Substantial Evidence Review – the Role of this Court</u>

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); <u>Johnson v. Comm'r of Soc. Sec.</u>, 529 F.3d 198, 200 (3d Cir. 2008); <u>Ficca v. Astrue</u>, 901 F. Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988).  Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971). A single piece of evidence is not

14

substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. <u>Mason v. Shalala</u>, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." <u>Consolo v. Fed. Maritime Comm'n</u>, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." <u>Leslie v. Barnhart</u>, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. <u>T-Mobile South, LLC v. Roswell</u>, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." <u>Ibid</u>.; <u>see, e.g., Perales</u>, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Consolidated Edison</u>, 305 U.S. at 229, 59 S.Ct. 206. <u>See Dickinson v. Zurko</u>, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999)

15

(comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek, 139 S. Ct. at 1154.

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F. Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions which flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the

ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

## B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); see also 20 C.F.R. §404.1505(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §404.1520(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able

18

to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §404.1545(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013) (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that: "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11

(3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where a well-supported medical source has identified limitations that would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. Biller, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir.

20

2006); <u>Cummings v. Colvin</u>, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015). In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. <u>Burns v. Barnhart</u>, 312 F.3d 113, 129 (3d Cir. 2002); <u>see also Metzger v. Berryhill</u>, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), <u>report and recommendation adopted sub nom. Metzgar v. Colvin</u>, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); <u>Rathbun v. Berryhill</u>, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), <u>report and recommendation adopted</u>, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. <u>Mason</u>, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §404.1512(f); <u>Mason</u>, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the

ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-07. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 433 (3d Cir. 1999).

### C. Legal Benchmarks for the ALJ's Assessment of Medical Opinions

The plaintiff filed this disability application after a paradigm shift in the manner in which medical opinions were evaluated when assessing Social Security claims. Prior to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy. However, in March of 2017, the Commissioner's regulations governing medical opinions changed in a number of fundamental ways. The range of opinions that ALJs were enjoined to consider were broadened substantially and the approach to evaluating opinions was changed from

a hierarchical form of review to a more holistic analysis. As one court as aptly

observed:

> The regulations regarding the evaluation of medical evidence have been
> amended for claims filed after March 27, 2017, and several of the prior
> Social Security Rulings, including SSR 96-2p, have been rescinded.
> According to the new regulations, the Commissioner "will no longer
> give any specific evidentiary weight to medical opinions; this includes
> giving controlling weight to any medical opinion." Revisions to Rules
> Regarding the Evaluation of Medical Evidence ("Revisions to Rules"),
> 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), see
> 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner
> must consider all medical opinions and "evaluate their persuasiveness"
> based on the following five factors: supportability; consistency;
> relationship with the claimant; specialization; and "other factors." 20
> C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).
>
> Although the new regulations eliminate the perceived hierarchy of
> medical sources, deference to specific medical opinions, and assigning
> "weight" to a medical opinion, the ALJ must still "articulate how [he
> or she] considered the medical opinions" and "how persuasive [he or
> she] find[s] all of the medical opinions." Id. at §§ 404.1520c(a) and
> (b)(1), 416.920c(a) and (b)(1). The two "most important factors for
> determining the persuasiveness of medical opinions are consistency and
> supportability," which are the "same factors" that formed the
> foundation of the treating source rule. Revisions to Rules, 82 Fed. Reg.
> 5844-01 at 5853.
>
> An ALJ is specifically required to "explain how [he or she] considered
> the supportability and consistency factors" for a medical opinion. 20
> C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to
> "supportability," the new regulations provide that "[t]he more relevant
> the objective medical evidence and supporting explanations presented
> by a medical source are to support his or her medical opinion(s) or prior
> administrative medical finding(s), the more persuasive the medical
> opinions or prior administrative medical finding(s) will be." Id. at §§
> 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with

respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. Id. at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). Id. at §§ 404.1520c(b)(3), 416.920c(b)(3).

Andrew G. v. Comm'r of Soc. Sec., No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020).

Oftentimes, as in this case, an ALJ must evaluate various medical opinions. Judicial review of this aspect of ALJ decision-making is still guided by several settled legal tenets. First, when presented with a disputed factual record, it is well-established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Thus, when evaluating medical opinions "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Mason, 994 F.2d at 1066). Therefore, provided that the decision

is accompanied by an adequate, articulated rationale, it is the province and the duty of the ALJ to choose which medical opinions and evidence deserve greater weight.

> Further, in making this assessment of medical evidence:
>
> An ALJ is [also] entitled generally to credit parts of an opinion without crediting the entire opinion. See Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015); Turner v. Colvin, 964 F. Supp. 2d 21, 29 (D.D.C. 2013) (agreeing that "SSR 96–2p does not prohibit the ALJ from crediting some parts of a treating source's opinion and rejecting other portions"); Connors v. Astrue, No. 10–CV–197–PB, 2011 WL 2359055, at *9 (D.N.H. June 10, 2011). It follows that an ALJ can give partial credit to all medical opinions and can formulate an RFC based on different parts from the different medical opinions. See e.g., Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015).

Durden v. Colvin, 191 F.Supp.3d 429, 455 (M.D. Pa. 2016).

## D. **The ALJ's Decision is Supported by Substantial Evidence.**

In this case, as discussed below, we find that the ALJ's decision limiting Toro to a closed period of benefits and finding that he was not disabled during this closed period is supported by substantial evidence. Therefore, we recommend that the court affirm this decision.

### 1. **Toro Has Waived Any Challenge to the ALJ's Decision to Consider a Closed Period of Disability.**

At the outset, Toro argues that the ALJ may have erred in limiting him to a closed period of disability extending from 2020 to September 2022. In our view this

argument fails because it ignores both the facts and Toro's own concessions before the ALJ.

The evidence in this case clearly shows that Toro was fully employed beginning in the Fall of 2022, working both for delivery companies and for a commercial marijuana growing operation. Given this immutable fact, the most that Toro could request would be a closed period of disability. Recognizing that his employment foreclosed any disability claim after the Fall of 2022, at the ALJ hearing Toro's counsel amended his claim to assert a closed period of disability from February 2020 to September 15, 2022. (Tr. 52). During the hearing, Toro agreed with his counsel that he was now able to work. (Tr. 56).

Toro is now bound by these facts and by his own decision to expressly waive any claim for benefits after the Fall of 2022. Indeed, it is a settled tenet of Social Security case law that claimants forfeit the right to advance claims which they have waived or abandoned. Fallon v. Dudek, 135 F.4th 831, 836 (9th Cir. 2025); Swiecichowski v. Dudek, 133 F.4th 751, 756 (7th Cir. 2025); Albro v. O'Malley, 740 F. Supp. 3d 26, 36 n. 7 (D. Mass. 2024).

So it is here. In our view, Toro has waived the argument that the ALJ erred in considering this case as a closed period claim by specifically requesting only a closed period of disability during the ALJ hearing. In any event, even if it was not waived,

this contention that Toro is entitled to benefits after September 2022 is unavailing given the evidence which plainly shows that he was able to work after that date.

## 2. **Substantial Evidence Supported the ALJ's Medical Opinion Analysis.**

As for Toro's challenge to the ALJ's evaluation of the various medical opinions issued in this case, we are mindful that we are not free to substitute our independent assessment of the evidence for the ALJ's determinations. Rather, we must simply ascertain whether the ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla, Richardson, 402 U.S. at 401, and "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce, 487 U.S. at 565. Judged against these deferential standards of review, we are constrained to find that substantial evidence supported the ALJ's evaluation of these medical opinions.

On this score, with respect to Toro's exertional limitations we note that there was a broad medical consensus that Toro could perform light work. Indeed, three of the four medical experts who opined in this case appear to have reached this conclusion. Moreover, Toro's activities of daily living—which included working out at a gym and coaching youth sports—certainly seemed to support this conclusion.

27

Further, nothing in the clinical record clearly commanded a more restrictive physical RFC. There was no error here.

Moreover, to the extent that there were some disagreements among the medical experts regarding Toro's postural or manipulative limitations, the ALJ provided an assessment, grounded in the evidence, for affording greater persuasive power to Dr. Tedesco's opinion. In particular, the ALJ observed that the more restrictive opinions of Drs. Malloy, Monfared and Stish were contradicted by Toro's self-reported activities; were inconsistent with the overall clinical history, and in some instances conflicted with the physician's own treating notes or reports.

When evaluating medical opinions, it is well settled that an ALJ may discount such opinions when they conflict with other objective tests or examination results. Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 202–03 (3d Cir. 2008). Likewise, an ALJ may conclude that discrepancies between a medical opinion, and the doctor's actual treatment notes, justifies giving a treating source opinion little weight in a disability analysis. Torres v. Barnhart, 139 F. App'x 411, 415 (3d Cir. 2005). Further, "an opinion . . . about what a claimant can still do which would seem to be well-supported by the objective findings would not be entitled to controlling weight if there was other substantial evidence that the claimant engaged in activities that were inconsistent with the opinion." Tilton v. Colvin, 184 F. Supp. 3d 135, 145

(M.D. Pa. 2016).

In this case the ALJ's medical opinion assessment followed these settled legal tenets. After a careful evaluation of the medical opinion evidence, the ALJ discounted those opinions which were contradicted by, or inconsistent with, other objective evidence like treatment notes, clinical evidence or the plaintiff's activities of daily living. Moreover, this medical opinion evaluation was supported by substantial evidence; that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce, 487 U.S. at 565. Therefore, Toro's challenge to this medical opinion evaluation is unavailing.

### 3. The ALJ Did Not Err in Failing to Incorporate Use of a Cane into the RFC

Finally, Toro alleges that the ALJ erred in failing to more fully address his need to use a cane to ambulate. This contention warrants only brief consideration. The difficulty with this argument is that there appears to be little evidence which established the medical necessity of a cane for ambulation during the pertinent time period. This is a material shortcoming of proof on the plaintiff's part since " 'To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing and describing the circumstances for which it is needed [.]'

Social Security Ruling 96–9p." <u>Howze v. Barnhart</u>, 53 Fed.Appx. 218, 222 (3d Cir.

2002). In short:

> Social Security regulations provide that an ALJ will not accommodate
> the use of a cane unless the claimant first provides "medical
> documentation establishing the need for a hand-held assistive device to
> aid in walking or standing, and describing the circumstances for which
> it is needed[.]" SSR 96–9p. Absent such documentation, an ALJ need
> not accommodate the use of a cane in a residual functional capacity
> assessment, even if the claimant was prescribed a cane by a doctor. <u>See</u>,
> <u>Howze v. Barnhart</u>, 53 Fed.Appx. 218, 222 (3d Cir. 2002).

<u>Williams v. Colvin</u>, No. 3:13-CV-2158, 2014 WL 4918469, at *10 (M.D. Pa.

Sept. 30, 2014). <u>See Phillips v. Colvin</u>, No. 1:16-CV-1033, 2017 WL 3820973, at

*9 (M.D. Pa. Aug. 16, 2017), <u>report and recommendation adopted sub nom. Philips</u>

<u>v. Colvin</u>, No. 1:16-CV-1033, 2017 WL 3780138 (M.D. Pa. Aug. 31, 2017).

In this instant case, the only medical opinion which suggested that Toro

needed a cane to ambulate was the opinion of Dr. Stish, which the ALJ found

unpersuasive. Further, the clinical evidence showed that at the time of Dr.

Monfared's examination of Toro in April of 2022, he did not use an assistive device

to ambulate. (Tr. 361). In addition, use of a cane to ambulate was inconsistent with

Toro's self-reported activities which included gym exercise and youth sport

coaching. Moreover, Toro himself indicated during his ALJ hearing that currently

he used a cane infrequently, as little as two or three times a month. Given this

constellation of facts, the ALJ was not required to incorporate use of a cane into Toro's residual functional capacity.

In closing, the ALJ's assessment of the evidence in this case complied with the dictates of the law and was supported by substantial evidence. This is all that the law requires, and all that a claimant can demand in a disability proceeding. Thus, notwithstanding the argument that this evidence might have been viewed in a way which would have also supported a different finding, we are obliged to affirm this ruling once we find that it is "supported by substantial evidence, 'even [where] this court acting *de novo* might have reached a different conclusion.'" Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting Hunter Douglas, Inc. v. NLRB, 804 F.2d 808, 812 (3d Cir. 1986)). Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we recommend that the court find that substantial evidence supported the ALJ's evaluation of this case.

## IV.    **Recommendation**

For the foregoing reasons, IT IS RECOMMENDED that the decision of the Commissioner in this case should be affirmed, and the plaintiff's appeal denied.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in

31

28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses, or recommit the matter to the magistrate judge with instructions.

Submitted this 31st day of July 2025.

_/S/ Martin C. Carlson_
Martin C. Carlson
United States Magistrate Judge